UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | | |
|---|---|---|
| MARY KOTTKE, | ) | No. CV 07-05618-VBK |
| Plaintiff, | ) ) | MEMORANDUM OPINION AND ORDER |
| v. | ) ) | (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

    This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

    This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court

concludes that the decision of the Commissioner must be reversed.

**STATEMENT OF ISSUES**

1. Whether the Administrative Law Judge ("ALJ") improperly depreciated Plaintiff's credibility;
2. Whether the ALJ improperly rejected the opinion of a treating physician;
3. Whether the ALJ properly evaluated the opinion of Plaintiff's chiropractor;
4. Whether the ALJ erred in finding that Plaintiff does not have a severe mental impairment; and
5. Whether the testimony of the vocational expert ("VE") supports a denial of benefits.

**I**

**THE ALJ DID NOT ERR IN DEPRECIATING PLAINTIFF'S CREDIBILITY**

Plaintiff appeared with her counsel on October 26, 2006 for her hearing before the ALJ. (AR 404-461.) Lengthy testimony was provided by Plaintiff concerning her pain symptoms. (AR 414-430.) She indicated, inter alia, the following:

- She has trouble concentrating, she is dizzy and her eyes bother her with inability to focus (AR 414);
- She has pain in her hand and neck and shoulders, with the neck pain being ubiquitous (AR 414-415);
- Sitting for long periods exacerbates her neck pain (Id.);
- Standing for long periods and walking increases her pain (AR 416);
- She can sit for only 15 minutes (Id.);

2

- She has spasms in her hand which lead to involuntary motions such as spilling things (AR 418);
- Her hands go numb and tingle (AR 419);
- It is difficult to grasp things like paper and money. She needs to hold a coffee cup with two hands (AR 420-421);
- She had difficulty raising her arms above her shoulders (AR 429-430);
- She lives with her daughter, who is 36, and does all the housework. Plaintiff does no housework (AR 436);
- Her daughter does the grocery shopping, although Plaintiff sometimes accompanies her. Plaintiff is never in the store for more than one-half hour (AR 437);
- She sometimes cooks simple meals, makes her own bed but does not do her own laundry because her daughter does it (AR 438);
- She does not go out with friends as a rule (AR 438);
- She spends her days talking to her dog and watching televison (AR 440).

In her Decision, the ALJ depreciated Plaintiff's credibility as to her self-reported pain symptoms on the following bases:

- During a consultative examination with an internal medicine doctor ("CE"), Plaintiff had normal movements, did not require the assistance of a cane that she brought to the examination, and despite having some limited range of motion and flexion, had straight leg raising which was negative bilaterally. Palpation along the paravertebral area did not elicit pain complaints, motor strength was graded to be

3

        normal at 5/5, and ranges of motion were within normal limits for upper and lower extremities. (AR 22-23, 216-221.)

- The extent of Plaintiff's ability to do activities of daily living ("ADL") is inconsistent both with her own description of her limitations, and with her self-reporting of pain. (AR 23, 91-106.)
- Despite her contention of unremitting pain, her treating psychologist, Dr. Snyder, reported that her pain symptoms have significantly remitted. (AR 22, 387.)

**A. Applicable Law**.

Subjective complaints of pain or other symptomology in excess of what an impairment would normally be expected to produce are subject to the credibility assessment of an ALJ. Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001). An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). When determining credibility, the ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also, Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001). In order to find that a claimant's subjective complaints are not credible, an ALJ "must specifically make findings that support this conclusion," Bunnell, 947 F.2d at 345, and provide "clear and convincing reasons." Rollins, 261 F.3d at 857; see also Varney v. Sec'y of Health & Human Serv., 846 F.2d 581, 584 (9th Cir. 1988) (requiring the ALJ to put forward "specific reasons" for discrediting

4

a claimant's subjective complaints).

The absence of objective evidence to corroborate a claimant's subjective complaints, however, does not by itself constitute a valid reason for rejecting her testimony. <u>Tonapetyan v. Halter</u>, 242 F.3d at 1147. However, weak objective support can undermine a claimant's subjective testimony of excess symptomology. <u>See</u> e.g., <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1998).

Implementing regulations prescribe factors which should be considered in determining credibility as to self-reported pain and other symptoms. In 20 C.F.R. §404.1529(c)(3), the factors to be considered are specified to include a claimant's daily activities ("ADL"); the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken; treatment received; and measures taken to relieve pain.

The regulations also specify that consideration should be given to inconsistencies or contradictions between a claimant's statements and the objective evidence:

> "We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons

5

about how your symptoms affect you."
(20 C.F.R. §404.1529(c)(4).)

**B.  Analysis**.

In Plaintiff's case, the ALJ relied upon a variety of factors in assessing her credibility. One of those factors concerns inconsistencies in the reporting of subjective complaints. For example, while Plaintiff testified about a variety of debilitating pain complaints, such as ubiquitous pain, muscle spasms in her hands, and the like, her treating physician reported on December 15, 2005 that her pain symptoms have "significantly remitted." (AR 387.)

Similarly, the ALJ noted the consultative examination ("C.E.") that Plaintiff received from Dr. Siciarz-Lambert. (See AR at 216-221.) While Plaintiff states that the ALJ got it wrong in noting that during this examination, palpation along the paravertebral area did not elicit pain complaints (JS at 13, AR 23), because this is not the locus of her pain, in fact, prior to that examination, Plaintiff reported to Dr. Siciarz-Lambert that the pain was in her lower back, "which is described as sharp and radiating down her left buttock and knee to the foot." (AR 216.) Thus, it was relevant to the ALJ's analysis to cite Dr. Siciarz-Lambert's findings, including the fact that despite complaining of this type of severe back pain, palpation of that area did not elicit any complaints of pain. Furthermore, while Plaintiff told Dr. Siciarz-Lambert that her back pain causes difficulty with bending, kneeling, stooping, crawling and crouching (AR 216), no such limitations were discovered during the comprehensive physical examination. Indeed, Dr. Siciarz-Lambert's musculoskeletal examination indicated that, "ranges of motion are appreciated to be

6

within normal limits for the upper and lower extremities." (AR 219.) Further, although Plaintiff articulated some pain complaints on lateral bending and twisting, Dr. Siciarz-Lambert noted that Plaintiff did not become unbalanced through such movements. (AR 219.) It is noted that while Plaintiff testified that her hands go numb and tingle, that she cannot grasp things easily such as paper and money, and that she needs to hold a coffee cup with two hands, Dr. Siciarz-Lambert's examination found no limitations in functional assessment for the use of both hands for fine and gross manipulation. (AR 220.) In other words, while Plaintiff demonstrated some areas of pain and some limitations in her functional abilities during the examination, they did not approach in intensity the description of her pain and limitations which she provided in great detail during her testimony. The ALJ's reliance, in part, on these inconsistencies, and on the findings of Dr. Siciarz-Lambert, is well-founded.

Finally, the issue of Plaintiff's ability to do ADLs is an issue of credibility evaluation. The ALJ found that Plaintiff was able to take care of her pet dog, including walking, feeding and grooming; to prepare simple meals on a daily basis; to do her own laundry; water her garden; and shop for groceries twice a week. (AR at 23, 84-98.) Again, Plaintiff appears to misconstrue the issue, which she asserts should turn on whether or not her ADL's are transferrable to the work setting. But here, the question is credibility; that is, has Plaintiff been consistent in describing her ADLs? It would certainly appear that there are serious inconsistencies. An individual who cannot grasp paper, and needs to hold a coffee cup with two hands, is not an individual who can do the extent of activities to which Plaintiff admitted in her documentation.

In sum, the Court finds that the ALJ relied upon accepted techniques for credibility evaluation, cited them appropriately, and on that basis, found lack of credibility in Plaintiff's subjective pain complaints.

## II

## THE ALJ IMPROPERLY REJECTED THE OPINION
## OF PLAINTIFF'S TREATING PHYSICIAN

In October 2004, Dr. Steven Brourman operated on Plaintiff to relieve a left cubital tunnel syndrome. (AR 21, 110-111.) He has treated Plaintiff since October 2002, and completed parts of a "Residual Functional Capacity Questionnaire" on October 23, 2006. (AR 317-323.) In pertinent part, Dr. Brourman opined that Plaintiff would have significant limitations in doing repetitive reaching, handling or fingering. He opined that she would be unable to grasp, turn, or twist objects with her hands; perform fine manipulations with her fingers; or reach (including overhead) with her arms. She would be unable to bend or twist. (AR 322.)

The ALJ rejected Dr. Brourman's specific conclusions on two bases: that the questionnaire was in part left blank, and is therefore incomplete; and that Dr. Brourman's assessment of Plaintiff's limitations is inconsistent with her ADLs. (AR 23.) Neither of these reasons suffice, and therefore, the matter must be remanded for further consideration of Dr. Brourman's opinion.

First, the ALJ's notation that Dr. Brourman's questionnaire is incomplete is not relevant to an evaluation of what Dr. Brourman <u>did</u> complete; the incomplete portions do not pertain to her upper extremities. The Commissioner points out, in addition, that Dr.

8

1 Brourman failed to answer whether he believes Plaintiff is a
2 malingerer (JS at 18, see AR at 319); however, it would seem illogical
3 for a treating physician to assess functional limitations in an
4 objective capacity, while at the same time harboring a belief that his
5 patient is a malingerer. In this regard, the fact that Dr. Brourman
6 had been Plaintiff's treating physician for four years, and had also
7 performed upper extremity surgery, is quite significant in the
8 evaluation of the weight to be accorded his opinion. It is hornbook
9 law that a treating physician's opinion in this instance may only be
10 rejected by providing specific and legitimate reasons. (See Thomas v.
11 Barnhart, 278 F.3d 947, 9th Cir. 2002.)

12 The second cited reason, that Dr. Brourman's opinions are
13 inconsistent with Plaintiff's reported ADLs, is factually incorrect.
14 The types of activities which Plaintiff indicated that she did on a
15 daily basis are not inconsistent with a finding that she is incapable
16 of performing an eight-hour-a-day job which requires the performance
17 of fine motor skills on a repetitive basis.

18 Finally, the other reasons cited by the Commissioner were not
19 relied upon by the ALJ in her opinion, and therefore cannot now be
20 cited as substantiating the decision. See Connett v. Barnhart, 340
21 F.3d 871, 874 (9th Cir. 2003). Such reasons include possibly contrary
22 findings by the consultative examiner, Dr. Siciarz-Lambert (see JS at
23 19) and findings of the State Agency physicians. (Id.)
24 //
25 //
26 //
27 //
28 //

### III

### **THE ALJ DID NOT ERR IN REJECTING THE FUNCTIONAL ANALYSIS PROVIDED BY PLAINTIFF'S CHIROPRACTOR**

In Plaintiff's third issue, she contends the ALJ did not properly evaluate the opinion of her chiropractor, Dr. Elie, who completed a "Physical Residual Functional Capacity ["RFC"] Questionnaire," of unknown origin, on October 23, 2006. (AR 288-294.) In that questionnaire, Dr. Elie provided his own assessment of Plaintiff's RFC. This conclusion was rejected by the ALJ in her decision, on the basis that a chiropractor is not an acceptable medical source pursuant to 20 C.F.R. §404.1513. Plaintiff disputes this as a proper basis for rejection of the chiropractor's opinion, noting that under applicable regulations and case law, the ALJ must consider all relevant evidence. While Plaintiff is correct with regard to this general principle, the ALJ was also correct in rejecting the functional analysis provided by the chiropractor.

20 C.F.R. §404.1513 defines those sources who are considered "acceptable medical sources to establish whether you have a medically determinable impairment(s)." (20 C.F.R. §404.1514(a).) Chiropractors are not included as acceptable medical sources, although they are noted as "other sources" to be considered, at subsection (d).

The ALJ was not bound to accept a residual functional capacity assessment rendered by a chiropractor based on his own diagnosis. To do so would blur the line between the type of evidence which may be considered from acceptable medical sources, as against evidence from other sources. Other sources may provide evidence to demonstrate the severity of an impairment. While it may be the case that an assessment of a claimant's RFC is a form of description of the

10

severity or extent of a claimant's impairment, the better view is that other sources may provide descriptions of a claimant's functioning which can provide evidence for a medical source to render an opinion as to that claimant's functional abilities.  None of the cases cited by Plaintiff contradict that reasoning.  For example, Plaintiff cites Dodrill v. Shalala, 12 F.3d 915 (9th Cir. 1993), to support her proposition that the ALJ should have considered the chiropractor's RFC assessment as competent evidence.  But Dodrill does not go that far.  There, testimony was offered of lay witnesses, such as claimant's daughter, as to her observations of Plaintiff's daily functioning.  The Ninth Circuit held that the ALJ's disregard of this evidence violated the Secretary's regulation "that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." (Id. at 919, citing 20 C.F.R. §404.1513(e)(2).)[1]

The ALJ specifically articulated that the chiropractor's opinions had been duly considered but concluded that, "in view of the medical record, they are not found to be persuasive." (AR 23.)  As the Commissioner notes, the medical record contains substantial evidence from medical sources upon which the ALJ relied in determining Plaintiff's RFC.[2]

For the foregoing reasons, Plaintiff's third issue has no merit.

---

[1]  The current version of that regulation incorporates in subsection (d) the requirement that evidence from "other sources" be considered.

[2]  The Court is mindful that on remand, the opinion of Plaintiff's treating physician, Dr. Brourman, will be reconsidered, and may impact the determination of Plaintiff's RFC.

11

**IV**

**THE ALJ DID NOT ERR IN DETERMINING THAT PLAINTIFF**

**DOES NOT HAVE A SEVERE MENTAL IMPAIRMENT**

Plaintiff asserts that the ALJ erred in determining that she does not have a severe mental impairment. In making her assessment, the ALJ considered the opinion of Craig Snyder, Ph.D., but found that it did not support a finding of a severe mental impairment. (AR at 22, 380-388.)

Plaintiff asserts that the ALJ failed to properly interpret Dr. Snyder's report.[3] Further, Plaintiff asserts that the ALJ failed to acknowledge the diagnosis of her primary care physician, Dr. Sander, that Plaintiff suffers from "anxiety order NOS." (JS at 11, citing AR 234.) For the reasons to be discussed, neither contention has merit.

Concerning Dr. Snyder, as the ALJ noted in her decision, Dr. Snyder found that Plaintiff had made "good progress in reducing her psychological symptoms" because "her depression and anxiety were notably less symptomatic." (AR 22, citing AR 382.) Further, Dr. Snyder diagnosed that Plaintiff had a major depressive disorder, single episode, of "mild severity." (AR 22, 383.) Dr. Snyder in fact noted that Plaintiff had no need for further psychological counseling. (AR 386.)

**A.   Applicable Law.**

**1.   Mental Impairment.**

In evaluating psychiatric impairments, 20 C.F.R. §404.1520a(e)(1)

---

[3] Dr. Snyder prepared his report as a Qualified Medical Examiner ("QME") in connection with a workers compensation matter involving Plaintiff.

12

and §416.920a(e)(1) require that consideration be given, among other things, to activities of daily living ("ADL"); social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require that consideration be given to "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to chronic mental disorders, structured settings, medication and other treatment."

20 C.F.R. §§404.1545(c) and 416.945(c) require that consideration be given to "residual functional capacity for work activity on a regular and continuing basis" and "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, [which] may reduce your ability to ... work."

The types of relevant evidence to be assessed in making these considerations are set forth in Social Security Ruling ("SSR") 85-16, which include such factors as history, findings, and observations from medical sources, reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior.

Under 20 C.F.R. §404.1520a(c)(2) and §416.920a(c)(2), consideration must be given to the extent to which a mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis ..."

The degree of functional limitations in four broad areas (ADLs; social functioning; concentration, persistence or pace; and episodes

of decompensation) are evaluated; that is, as to the first three functional areas, the following five-point scale is utilized: none, mild, moderate, marked, and extreme. With regard to the fourth area, a four-point scale is utilized: none, one or two, three, four or more. (20 C.F.R. §§416.920a(3),(4) and 404.1520a(c)(3),(4).

Further guidance is provided in SSR 85-16, which, although it does not specifically mention concentration, persistence or pace, does note, "Ability to sustain activities, interests, and relate to others over a period of time. The frequency, appropriateness, and independence of the activities must also be considered" as well as "ability to function in a work-like situation."

When there is finding of "moderate" difficulties in the area of maintaining concentration, persistence or pace, this factor must be included in any hypothetical question posed at a hearing to a vocational expert ("VE"). Thus, one court has held that referring merely to "simple jobs" or "unskilled sedentary work" in a hypothetical question is insufficient to describe and to accommodate difficulties in this functional area. See Newton v. Chater, 92 F.3d 688 (8th Cir. 1996).

The regulations do not provide a standard definition of "moderate." (See 20 C.F.R. §416.902a(c)(4).) They do note, however, that a finding of "none" or "mild" in the first three areas "will generally [mean] that your impairment(s) is not severe, ..." See 20 C.F.R. §920a(d)(1).

The Commissioner has issued a Policy Operations and Manual of Systems ("POMS"), which is an internal employee guidance manual. While not having the force of law, this manual can be persuasive authority. See Warre v. Commissioner, Social Sec. Admin., 439 F.3d

14

1001, 1005 (9th Cir. 1996). POMS provides guidance for the completion of the Functional Capacity Assessment form (Form SSA-4734-F4-Sup) and instructs that a reviewing source should check "'[M]oderately limited' when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." The degree and extent of the capacity or limitation should be set forth in a narrative format in the form.

HALLEX is the Hearings Appeals and Litigation Law Manual, which is also an internal agency guide. HALLEX requires that when an ALJ requests a consultative examination, the ALJ should provide the corresponding state agency with a "medical source statement form." (See HALLEX I-2-5-20.) Form HA-1152, the Medical Assessment of Ability to do Work-Related Activities (Mental), provides definitions for the ratings of none, slight, moderate, marked, and extreme. Thus, moderate rating is defined as "there is moderate limitation in this area but the individual is still able to function satisfactorily."

In LaCroix v. Barnhart, 465 F.3d 881, 888 (8th Cir. 2006), the Eighth Circuit upheld an ALJ's finding that a claimant found to have a moderate limitation in her ability to respond appropriately to work pressures in a usual work setting would still be able to satisfactorily function in this area. (See Id. at 888.) The appellate Court noted that the evaluation form (HA-11) defined moderate as indicating that the individual could still function satisfactorily. (See, Id.)

    **2.**    **Effect of Workers Compensation Terminology in Social Security Cases**.

As noted by Judge Wistrich in his opinion in Booth v. Barnhart,

1  181 F.Supp.2d 1099 (C.D. Cal. 2002):

2  "Workers' compensation disability ratings are not
3  controlling in disability cases decided under the Social
4  Security Act, and the terms of art used in the California
5  workers' compensation guidelines are not equivalent to
6  Social Security disability terminology. See <u>Macri v.
7  Chater</u>, 93 F.3d 540, 544 (9th Cir. 1996); <u>Desrosiers v.
8  Secretary of Health and Human Services</u>, 846 F.2d 573, 576
9  (9th Cir. 1988); see also <u>Coria v. Heckler</u>, 750 F.2d 245, 247
10 (3rd Cir. 1984)('The ALJ correctly noted that there are
11 different statutory tests for disability under workers'
12 compensation statutes and under the Social Security Act.');
13 20 C.F.R. §§404.1504, 416.904."

14 (<u>Id</u>. at 1104.)

16 **B. <u>Analysis</u>**.

17 Dr. Snyder's opinion was founded upon his diagnosis that
18 Plaintiff had a "mild" level of Major Depressive Disorder. As defined
19 in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-
20 IV"), a mild disorder incorporates a conclusion that the individual
21 has "few, if any symptoms in excess of those required to make the
22 diagnosis... and symptoms result in no more than minor impairment in
23 social or occupational functioning." (American Psychiatric
24 Association, DSM-IV, p. 2 (4th Ed. 1991).) Here, the ALJ did evaluate
25 Dr. Snyder's opinion in accordance with the acceptable techniques
26 described above. It was not unreasonable for the ALJ to conclude that
27 Dr. Snyder's opinion that Plaintiff's limitation were "minimal" and
28 "very slight" equated to functional limitations fairly categorized

1  under Social Security terminology as "mild."  With regard to
2  Plaintiff's complaint that the ALJ failed to acknowledge the opinion
3  of Dr. Sander, she was under no obligation to do so, because Dr.
4  Sander's assessment that Plaintiff has "anxiety order NOS" was
5  unaccompanied by any evidence of clinical testing, including mental
6  status examination, or any type of examination. (See AR at 234; 20
7  C.F.R. §404.1527(e)(2).)  In addition, Dr. Sander provided no opinion
8  as to any possible functional limitations which might accompany her
9  assessment.  As such, it was nothing more than a diagnosis and, as
10 noted, diagnosis of a mental impairment is insufficient to constitute
11 proof that such an impairment is disabling.  In this case, the extent
12 of the evidence does not suffice to justify a conclusion that
13 Plaintiff suffered from a severe mental impairment at all.

14   For the foregoing reasons, Plaintiff's fourth issue has no merit.
15   For the foregoing reasons, the matter will be remanded for
16 further hearing consistent with this Memorandum Opinion.[4]

17   **IT IS SO ORDERED.**

19 DATED: August 1, 2008          /s/
                                  VICTOR B. KENTON
20                                UNITED STATES MAGISTRATE JUDGE

---

[4] The Court declines to address Issue No. 5, articulated as whether the vocational testimony can support a denial of benefits. In particular, the ALJ's determination at Step Five of the sequential analysis that Plaintiff could perform gainful employment was premised upon a hypothetical question, and a finding that Plaintiff could perform a job which requires occasional reaching, handling and fingering, and which, as normally performed, could require up to frequent reaching, handling and fingering. (See AR 24.) In view of the fact that, on remand, Dr. Brourman's opinion that Plaintiff would have significant limitations in doing repetitive reaching, handling or fingering must be further evaluated, it is not necessary to further examine the correctness of the ALJ's determination at Step Five.